UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ORIGINAL

- - - - - - - - - - - - - - - - x
                       :

UNITED STATES OF AMERICA     :

                       :       **SEALED**

          - v. -         :       **SUPERSEDING INDICTMENT**

                       :

TERRENCE WILLIAMS,          :       S3 21 Cr. 603 (VEC)
AAMIR WAHAB,                :
WILLIAM WASHINGTON,        :
ALAN ANDERSON,             :
KEYON DOOLING,             :
ANTHONY ALLEN,             :
DESIREE ALLEN,             :
SHANNON BROWN,             :
WILLIAM BYNUM,             :
RONALD GLEN DAVIS,         :
CHRISTOPHER DOUGLAS-ROBERTS,  :
   a/k/a "Supreme Bey,"      :
JAMARIO MOON,              :
DARIUS MILES,              :
MILTON PALACIO,            :
RUBEN PATTERSON,           :
EDDIE ROBINSON,            :
SEBASTIAN TELFAIR,         :
CHARLES WATSON JR., and     :
ANTHONY WROTEN,           :

               Defendants. :
- - - - - - - - - - - - - - - - X

## COUNT ONE
### (Conspiracy to Commit Health Care Fraud and Wire Fraud)

The Grand Jury charges:

### OVERVIEW

1.  At all times relevant to this Indictment, the National
Basketball Association Players' Health and Welfare Benefit Plan[1]

---

[1] The Plan was formerly known as the National Basketball Players'
Association - National Basketball Association ("NBPA-NBA")
Supplemental Benefit Plan.

(the "Plan") was a health care plan providing benefits to eligible active and former National Basketball Association ("NBA") players. From at least in or about 2017, up to and including at least in or about 2021, TERRENCE WILLIAMS, AAMIR WAHAB, WILLIAM WASHINGTON, ALAN ANDERSON, KEYON DOOLING, ANTHONY ALLEN, DESIREE ALLEN, SHANNON BROWN, WILLIAM BYNUM, RONALD GLEN DAVIS, CHRISTOPHER DOUGLAS-ROBERTS, a/k/a "Supreme Bey," JAMARIO MOON, DARIUS MILES, MILTON PALACIO, RUBEN PATTERSON, EDDIE ROBINSON, SEBASTIAN TELFAIR, CHARLES WATSON JR., and ANTHONY WROTEN, the defendants, and others known and unknown, engaged in a widespread scheme to defraud the Plan by submitting and causing to be submitted false and fraudulent claims for reimbursement of expenses for medical and dental services that were not actually rendered. Over the course of the scheme, the defendants, and co-conspirators known and unknown, submitted and caused to be submitted to the Plan false and fraudulent claims totaling at least approximately $5 million from which the defendants received at least approximately $2.5 million in fraudulent proceeds.

2.   TERRENCE WILLIAMS, the defendant, orchestrated the scheme to defraud the Plan. WILLIAMS, ALAN ANDERSON and KEYON DOOLING, the defendants, each recruited other Plan participants to defraud the Plan by offering to supply them with false invoices to support their false and fraudulent claims to the Plan in exchange for payments to WILLIAMS and DOOLING.

3.    AAMIR WAHAB, the defendant, is a licensed dentist who provided TERRENCE WILLIAMS and KEYON DOOLING, the defendants, with fake invoices for dental services that were not actually rendered in exchange for proceeds from the Plan.  WILLIAM WASHINGTON, the defendant, is a licensed physician who provided WILLIAMS with fake invoices for wellness services that were not actually provided in exchange for proceeds from the Plan.  WILLIAMS also directed others to create fake invoices for chiropractic services that were not actually provided.

4.    TERRENCE WILLIAMS, the defendant, provided ALAN ANDERSON, ANTHONY ALLEN, DESIREE ALLEN, SHANNON BROWN, WILLIAM BYNUM, RONALD GLEN DAVIS, CHRISTOPHER DOUGLAS-ROBERTS, a/k/a "Supreme Bey," JAMARIO MOON, DARIUS MILES, MILTON PALACIO, RUBEN PATTERSON, EDDIE ROBINSON, SEBASTIAN TELFAIR, CHARLES WATSON JR., and ANTHONY WROTEN, the defendants, and others, with false provider invoices from AAMIR WAHAB and WILLIAM WASHINGTON, the defendants, and invoices WILLIAMS had two other co-conspirators create, to support their false and fraudulent claims that described medical and dental services that were not in fact provided, which those defendants then submitted and caused to be submitted to the Plan. KEYON DOOLING, the defendant, also provided other co-conspirators with false provider invoices from WAHAB to support their false and fraudulent claims that described dental services that were not in

3

fact provided, which co-conspirators then submitted and caused to be submitted to the Plan.

5.    TERRENCE WILLIAMS and ALAN ANDERSON, the defendants, also assisted RONALD GLEN DAVIS and CHARLES WATSON JR., the defendants, and Antoine Wright in procuring fraudulent letters of medical necessity to justify some of the purported medical services that were the subject of fraudulent invoices. In addition, in furtherance of the scheme, WILLIAMS impersonated several individuals, including three individuals who processed Plan claims.

6.    In return for his provision of false supporting documentation for their fraudulent claims, many of the defendants paid TERRENCE WILLIAMS, the defendant, kickbacks totaling at least approximately $300,000.    Through deception, including by impersonating others, WILLIAMS further acquired at least approximately $600,000 from certain co-conspirators.

### BACKGROUND ON THE PLAN

7.    The Plan is a "health care benefit program," as defined by Title 18, United States Code, Section 24(b). The Plan is intended to provide additional coverage to eligible NBA players' existing medical coverage. The Plan provides a health reimbursement account ("HRA") benefit that allows for the reimbursement of certain medical expenses incurred by eligible active and former NBA players, their spouses, and other dependents

4

that are not covered by a player's primary insurance carrier. Each eligible Plan participant ("Plan Participant") has an individual HRA from which the Plan pays benefits. The Plan was funded through contributions by NBA member teams; those contributions were generally allocated equally among the HRAs for all eligible Plan Participants. In addition to NBA member team contributions, HRAs are adjusted for investment gains or losses based on a proportionate share of the investment returns on the HRA-related assets held in the Plan's trust.

8.   To be a Plan Participant eligible to receive the HRA benefit from the Plan, a player must meet certain tenure requirements, which generally means at least three credited regular seasons on an NBA team Roster. Plan Participants who incur any eligible medical expenses, as defined under Section 213(d) of the Internal Revenue Code, that are not covered by insurance, including charges by doctors and dentists, may be reimbursed for such expenses from the Plan Participant's HRA. The Plan's reimbursements to Plan Participants for eligible medical expenses are tax-free to the Plan Participant.

9.   The Plan is administered by the Board of Trustees (the "Board"), which consists of three members appointed by the NBA and three members appointed by the NBPA, which have offices in New York, New York and Secaucus, New Jersey, respectively. The Board appoints an Administrative Manager for the Plan. The

Administrative Manager is an entity that oversees the Plan's day-to-day management. All claims for benefits must be filed with the Administrative Manager, and the Administrative Manager determines whether claims are eligible to be paid under the Plan.

10. During the time period of the scheme described herein, the Plan employed two different entities to serve as the Administrative Manager at different times. One entity served as the Administrative Manager for the Plan between in or about 2004 and in or about early 2019. The second entity currently serves as the Administrative Manager for the Plan and has served in that role since in or about early 2019. As used herein, both entities are identified as the "Administrative Manager."

11. Plan Participants can submit reimbursement claims by mail, fax, or electronically. Claims under the Plan must be submitted to the Administrative Manager on the forms provided by the Administrative Manager and must include certain documentation, including itemized receipts reflecting that the charges were for eligible medical expenses and, in the case of a reimbursement, were paid by the Plan Participant. The Plan's Claim Form requests information from the Plan Participant, including details of the claim (e.g., type of service provided, the date, name of the participant or dependent for whom the service was provided, and the cost). On the Claim Form, the

Plan Participant also must certify, among other things, that the information the Plan Participant entered in the Claim Form is correct.  The Claim Form states that "fraud is a felony in most states punishable by fines and/or imprisonment.  Providing misleading or false information constitutes fraud."

12.  If the Administrative Manager determined that a claim was eligible for payment by the Plan, the Plan Participant could be reimbursed in various ways, including by (a) a check sent through the mail or (b) payment sent by direct deposit.

13.  A Plan Participant is also provided a debit card ("Plan Debit Card") by the Administrative Manager.  The Plan Debit Card may be used by the Plan Participant to pay for eligible medical expenses at the point of service.  The Administrative Manager often requires Plan Participants to provide documentation evidencing that services (or products) purchased with their Plan Debit Card were for eligible medical expenses.

## RELEVANT PERSONS

14.  TERRENCE WILLIAMS, ALAN ANDERSON, KEYON DOOLING, ANTHONY ALLEN, SHANNON BROWN, WILLIAM BYNUM, RONALD GLEN DAVIS, CHRISTOPHER DOUGLAS-ROBERTS, a/k/a "Supreme Bey," JAMARIO MOON, DARIUS MILES, MILTON PALACIO, RUBEN PATTERSON, EDDIE ROBINSON, SEBASTIAN TELFAIR, CHARLES WATSON JR., and ANTHONY WROTEN, the defendants, are each former NBA players and Plan Participants (collectively, the "Player Defendants").

15.   DESIREE ALLEN, the defendant, is the spouse of ANTHONY ALLEN, the defendant.

16.   CHIROPRACTIC   OFFICE-1   was   a   chiropractic   and rehabilitation office in Encino, California, affiliated with a particular chiropractor ("CHIROPRACTOR-1").  CHIROPRACTIC OFFICE-1 operates under two different names.

17.   DENTAL OFFICE-1 and DENTAL OFFICE-2 were dental offices in Beverly Hills, California, affiliated with AAMIR WAHAB, the defendant, who is a dentist licensed in California.

18.   WELLNESS OFFICE-1 was a doctor's office that advertised its specialties in sexual health, anti-aging, and general well-being in Washington State, and was affiliated with WILLIAM WASHINGTON, the defendant, who is a physician and surgeon licensed in Washington.

19.   DOCTOR-2 is a particular doctor affiliated with a healthcare   facility   that   advertised   its   specialties   in conventional medicine and alternative and natural therapies.

20.   ADMINISTRATIVE MANAGER EMPLOYEE-1 was a particular employee of one of the Administrator Manager entities.

21.   ADMINISTRATIVE MANAGER EMPLOYEE-2 and ADMINISTRATIVE MANAGER EMPLOYEE-3, both have the same first name ("Name-1"), and were particular employees of one of the Administrator Manager entities.

22.  Two other co-conspirators not named herein ("CC-1" and "CC-2") were associates of TERRENCE WILLIAMS, the defendant, and assisted WILLIAMS in creating fabricated CHIROPRACTIC OFFICE-1 invoices.  Additionally, two other co-conspirators not named herein ("CC-3" and "CC-4"), are each former NBA players and Plan Participants who conspired with the Player Defendants.

## THE FRAUDULENT SCHEME

23.  The Scheme required the Player Defendants to present to the Administrative Manager fraudulent invoices evidencing they received medical services when, in truth and in fact, they did not receive any such services.  TERRENCE WILLIAMS and KEYON DOOLING, the defendants, obtained fraudulent invoices from medical providers.  WILLIAMS also created, and directed others to create, fraudulent invoices.

a. Both TERRENCE WILLIAMS and KEYON DOOLING, the defendants, worked with a licensed dentist, AAMIR WAHAB, the defendant, to defraud the Plan.  WILLIAMS and DOOLING (i) referred other former NBA players, including, for example, many of the Player Defendants, to WAHAB so they could acquire fraudulent invoices from WAHAB, which were submitted to the Plan; and/or (ii) agreed to have WAHAB charge Plan Debit Cards of former NBA players that were their co-conspirators for medical services that were never provided.  In either case, a portion of the proceeds were divided between WAHAB and WILLIAMS or DOOLING.

24.   In or about November 2017, TERRENCE WILLIAMS, the defendant, submitted and caused to be submitted false and fraudulent claims to the Plan seeking reimbursement of $19,000 for services that WILLIAMS purportedly received from CHIROPRACTIC OFFICE-1, along with fabricated CHIROPRACTIC OFFICE-1 invoices created by CC-1 at WILLIAMS's direction. The Administrative Manager approved WILLIAMS's $19,000 claim in part, and the Plan paid $7,672.55 to WILLIAMS in connection with his false and fraudulent claim.

25.   After defrauding the Plan for his own claims, TERRENCE WILLIAMS, the defendant, with the assistance of ALAN ANDERSON, the defendant, next recruited other former NBA players to defraud the Plan. WILLIAMS offered to provide fraudulent invoices for CHIROPRACTIC OFFICE-1, DENTAL OFFICE-1, DENTAL OFFICE-2, and WELLNESS OFFICE-1 to former NBA players so that they could submit to the Administrative Manager false and fraudulent claims based on those fraudulent invoices and receive reimbursement for medical and/or dental services that they did not receive and for which they did not pay. Former NBA players including the Player Defendants, and others known and unknown, paid kickbacks to WILLIAMS in connection with the fraudulent scheme.

26.   From at least in or about December 2017 through at least in or about July 2019, KEYON DOOLING, the defendant, submitted and caused to be submitted fraudulent invoices obtained from

CHIROPRACTIC OFFICE-1 and DENTAL OFFICE-1. In total, DOOLING submitted, or caused to be submitted, approximately $400,000 worth of fraudulent CHIROPRACTIC OFFICE-1 and DENTAL OFFICE-1 invoices to the Administrative Manager. The Administrative Manager provided DOOLING approximately $350,000 in reimbursements in connection with the aforementioned fraudulent invoices.

## THE FALSE AND FRAUDULENT CHIROPRACTIC OFFICE-1 CLAIMS

### TERRENCE WILLIAMS Provided Fabricated Chiropractic Office-1 Invoices to Co-Conspirators in Furtherance of Their Scheme to Defraud the Plan

27.   Between in or about November 2017 and December 2017, and again from in or about November 2018 to June 2019, at the direction of TERRENCE WILLIAMS, the defendant, CC-1 created fake CHIROPRACTIC OFFICE-1 invoices for TERRENCE WILLIAMS, EDDIE ROBINSON, RUBEN PATTERSON, WILLIAM BYNUM, CHRISTOPHER DOUGLAS-ROBERTS, a/k/a "Supreme Bey," ANTHONY ALLEN, DARIUS MILES, SEBASTIAN TELFAIR, ALAN ANDERSON, and SHANNON BROWN, the defendants, as well as others known and unknown, and emailed them to WILLIAMS. For example, on or about May 28, 2019, CC-1 emailed WILLIAMS a template for a fraudulent invoice designed to appear as if it had been issued by CHIROPRACTIC OFFICE-1, when it was not. In addition, on many other occasions, CC-1 sent emails to WILLIAMS attaching fake CHIROPRACTIC OFFICE-1 invoices bearing the names of co-conspirators for WILLIAMS to review before the fake invoices were finalized.

28.   In or about May 2019, CC-2 created fake CHIROPRACTIC OFFICE-1 invoices for RONALD GLEN DAVIS and CHARLES WATSON JR., the defendants, and Antoine Wright, and emailed them to TERRENCE WILLIAMS, the defendant. On or about May 3, 2019, CC-2 sent an email to CC-2's self that attached a template for a fake CHIROPRACTIC OFFICE-1 invoice that had the date, invoice number, services, and charge of $15,000 filled in; however, the "bill to" box, where the name of the patient would ordinarily be found, was blank.

29.   Between on or about December 6, 2017 and June 13, 2019, TERRENCE WILLIAMS, the defendant, emailed false and fraudulent CHIROPRACTIC OFFICE-1 invoices to EDDIE ROBINSON, RUBEN PATTERSON, WILLIAM BYNUM, CHRISTOPHER DOUGLAS-ROBERTS, a/k/a "Supreme Bey," ANTHONY ALLEN, DESIREE ALLEN, DARIUS MILES, SEBASTIAN TELFAIR, ALAN ANDERSON, SHANNON BROWN, RONALD GLEN DAVIS, and CHARLES WATSON JR., the defendants, as well as to Antoine Wright and Gregory Smith.

### TERRENCE WILLIAMS and ALAN ANDERSON Assisted in Procuring Fraudulent Letters of Medical Necessity for RONALD GLEN DAVIS, CHARLES WATSON JR., and Antoine Wright in Furtherance of the Fraudulent Scheme

30.   The CHIROPRACTIC OFFICE-1 invoices fabricated by CC-1 and CC-2 for TERRENCE WILLIAMS, the defendant, generally described the same services: therapeutic exercise, manual therapy, whirlpool, aquatic therapy or exercise, and electrical

stimulation. For example, RONALD GLEN DAVIS and CHARLES WATSON JR., the defendants, as well as Antoine Wright, each submitted claims for reimbursement on or about May 8, 2019 (the "May 8, 2019 Claims"); each of those claims was supported by a set of fake CHIROPRACTIC OFFICE-1 invoices that described the following same services as having been received by DAVIS, WATSON JR., and Wright: Manual therapy, Whirlpool, Massage, Vasopneumatic Device, Therapeutic Exercise, and Electrical Stimulation.

31. To verify that particular services qualified for reimbursement under the Plan, the Administrative Manager would sometimes request that a Plan Participant provide a letter from a licensed physician indicating that the received services were medically necessary. With respect to the CHIROPRACTIC OFFICE-1 claims of RONALD GLEN DAVIS, and CHARLES WATSON JR., the defendants, and Antoine Wright, the Administrative Manager requested that letters of medical necessity be provided to justify the May 8, 2019 Claims for CHIROPRACTIC OFFICE-1 services. On May 31, 2019, TERRENCE WILLIAMS, the defendant, received emails entitled "Scanned Copies" from a UPS store in Tukwila, Washington – near where WILLIAMS resides – which attached responsive letters of medical necessity purporting to be from CHIROPRACTOR-1 dated May 31, 2019, for DAVIS, WATSON JR., and Wright (the "May 31, 2019 CHIROPRACTOR-1 Letters"). ALAN ANDERSON, the defendant, counseled, aided, and induced at least one co-conspirator to submit

the May 31, 2019 CHIROPRACTOR-1 Letters to the Administrative
Manager.

32.   The May 31, 2019 CHIROPRACTOR-1 Letters were submitted
to the Administrative Manager to obtain reimbursement for the May
8, 2019 Claims. The May 31, 2019 CHIROPRACTOR-1 Letters are unusual
in several respects: they are not on letterhead, contain unusual
formatting, have grammatical errors, and one of the letters
misspells a purported patient's name.   An example of one of the
May 31, 2019 CHIROPRACTOR-1 Letters is depicted below:

5.31.19

Hello, I was told a letter was needed for some players, for
Reimbursement. I am the main physician at ███████████████████
And RONALD DAVIS, has been coming here for treatment. Full body service that was required to get
Him healthy, Chronic pain in knee and neck.

Thank you, DR. ██████

33.   On or about June 10, 2019, the Administrative Manager
advised RONALD GLEN DAVIS and CHARLES WATSON JR. that the letters
of medical necessity had to be from a primary care physician on
official letterhead.   Shortly thereafter, on or about June 12,
2019, ALAN ANDERSON, the defendant, emailed TERRENCE WILLIAMS, the
defendant, with revised letters dated June 12, 2019, purportedly
from DOCTOR-2, that refer RONALD GLEN DAVIS and CHARLES WATSON JR.,

the defendants, and Antoine Wright, to CHIROPRACTIC OFFICE-1 (the "June 12, 2019 Letters"). On or about June 25, 2019, ANDERSON emailed WILLIAMS with updated referral letters dated June 25, 2019, purportedly from DOCTOR-2, for DAVIS, WATSON JR., and Wright (the "June 25, 2019 Letters"). The June 25, 2019 Letters were submitted to the Administrative Manager in connection with DAVIS, WATSON JR., and Wright's respective claims for reimbursement for services from CHIROPRACTIC OFFICE-1 and described injuries that were different than the injuries described in the May 31, 2019 CHIROPRACTER-1 Letters.

### False and Fraudulent Chiropractic Office-1 Claims Were Submitted in Furtherance of the Fraudulent Scheme

34. Between on or about December 7, 2017 and May 8, 2019, EDDIE ROBINSON, RUBEN PATTERSON, WILLIAM BYNUM, CHRISTOPHER DOUGLAS-ROBERTS, a/k/a "Supreme Bey," ANTHONY ALLEN, DESIREE ALLEN, DARIUS MILES, SEBASTIAN TELFAIR, ALAN ANDERSON, SHANNON BROWN, RONALD GLEN DAVIS, CHARLES WATSON JR., the defendants, and others known and unknown, submitted and caused to be submitted false and fraudulent claims to the Plan seeking reimbursement for services purportedly performed by CHIROPRACTIC OFFICE-1 that ROBINSON, PATTERSON, BYNUM, DOUGLAS-ROBERTS, ANTHONY ALLEN, MILES, TELFAIR, ANDERSON, BROWN, DAVIS, and WATSON JR., in truth and in fact, did not receive. The claims consisted of: (a) false and fraudulent reimbursement claim forms in which ROBINSON, PATTERSON,

BYNUM, DOUGLAS-ROBERTS, ANTHONY ALLEN, MILES, TELFAIR, ANDERSON, BROWN, DAVIS, and WATSON JR., each falsely certified that he had received chiropractic services on specific service dates; and (b) false and fraudulent CHIROPRACTIC OFFICE-1 invoices.

35.   The Administrative Manager approved the fraudulent CHIROPRACTIC OFFICE-1 claims of EDDIE ROBINSON, RUBEN PATTERSON, WILLIAM BYNUM, and CHRISTOPHER DOUGLAS-ROBERTS, a/k/a "Supreme Bey," ANTHONY ALLEN, DARIUS MILES, SEBASTIAN TELFAIR, ALAN ANDERSON, and SHANNON BROWN, the defendants. The Plan paid: $65,000 to ROBINSON; $40,000 to PATTERSON; $182,224.09 to BYNUM; $117,123.24 to DOUGLAS-ROBERTS; $265,000 to ANTHONY ALLEN; $260,000 to MILES; $207,000 to TELFAIR; $121,000 to ANDERSON; and $320,000 to BROWN.

36.   The Board later independently reviewed the CHIROPRACTIC OFFICE-1 claims of ANTHONY ALLEN, SEBASTIAN TELFAIR, ALAN ANDERSON, and SHANNON BROWN, the defendants. As part of this review, the Board tried to substantiate that ANTHONY ALLEN, TELFAIR, ANDERSON, and BROWN had received the medical services from CHIROPRACTIC OFFICE-1 that formed the basis of their claims, and concluded that ANTHONY ALLEN, TELFAIR, ANDERSON, and BROWN had not received such services. The Board concluded that the CHIROPRACTIC OFFICE-1 claims of ANTHONY ALLEN, TELFAIR, ANDERSON, and BROWN should not have been approved and retroactively denied their claims. The Board also advised that ANTHONY ALLEN, TELFAIR,

ANDERSON, and BROWN needed to repay the money that they received in connection with these claims. ANTHONY ALLEN agreed to a repayment plan and ultimately repaid $420,075 he owed the Plan for his CHIROPRACTIC OFFICE-1 and DENTAL OFFICE-2 claims. TELFAIR, ANDERSON, and BROWN did not make any repayments to the Plan, nor did they appeal the Board's decision.

37.  The Administrative Manager denied the CHIROPRACTIC OFFICE-1 claims of: (a) RONALD GLEN DAVIS, the defendant, for $215,000; (b) CHARLES WATSON JR., the defendant, for $250,000; and others known and unknown. Upon review and investigation of these claims, the Board concluded that DAVIS, WATSON JR., and others did not receive the CHIROPRACTIC OFFICE-1 services set forth in their claims.

## THE FALSE AND FRAUDULENT DENTAL OFFICE-1 AND DENTAL OFFICE-2 CLAIMS

### AAMIR WAHAB Provided TERRENCE WILLIAMS Fraudulent Dental Office-1 and Dental Office-2 Invoices, Which WILLIAMS Sent to Co-Conspirators, in Furtherance of The Scheme to Defraud the Plan

38.  Between on or about April 12, 2018 and May 7, 2019, TERRENCE WILLIAMS, the defendant, emailed false and fraudulent DENTAL OFFICE-1 invoices for RUBEN PATTERSON, JAMARIO MOON, ANTHONY WROTEN, RONALD GLEN DAVIS, and CHARLES WATSON JR., the defendants, as well as for relatives of PATTERSON, to PATTERSON, MOON, WROTEN, DAVIS, WATSON JR., and a relative of PATTERSON. AAMIR

WAHAB, the defendant, and/or DENTAL OFFICE-1 staff emailed these DENTAL OFFICE-1 invoices to WILLIAMS.

39.   Between on or about March 20, 2019 and March 21, 2019, TERRENCE WILLIAMS, the defendant, emailed false and fraudulent DENTAL OFFICE-2 invoices for ANTHONY ALLEN and SEBASTIAN TELFAIR, the defendants, as well as a relative of TELFAIR, to ANTHONY ALLEN, DESIREE ALLEN, and TELFAIR. AAMIR WAHAB, the defendant, emailed these DENTAL OFFICE-2 invoices, as well as DENTAL OFFICE-2 invoices for DARIUS MILES, the defendant, and a relative of MILES, to WILLIAMS.

40.   The DENTAL OFFICE-1 and DENTAL OFFICE-2 invoices for RUBEN PATTERSON, JAMARIO MOON, ANTHONY WROTEN, ANTHONY ALLEN, DARIUS MILES, SEBASTIAN TELFAIR, RONALD GLEN DAVIS, and CHARLES WATSON JR., the defendants, as well as for relatives of PATTERSON and MILES, purported to show that they each received dental services at DENTAL OFFICE-1 or DENTAL OFFICE-2 in Beverly Hills, California on particular dates when, in truth and in fact, they did not, as they were not in California on certain of those dates. For example:

a.   DAVIS's DENTAL OFFICE-1 invoice purported to show that on or about October 2, 2018, DAVIS received crowns on eight teeth at DENTAL OFFICE-1 in Beverly Hills, California for $27,200. However, DAVIS was not in California on that date. Flight records show that DAVIS took a flight from Las Vegas, Nevada to Paris,

France on October 2, 2018. In addition, according to geolocation data for DAVIS's cellphone, DAVIS was in Nevada and Utah on October 2, 2018.

41.   According to the DENTAL OFFICE-1 and DENTAL OFFICE-2 invoices, RUBEN PATTERSON, JAMARIO MOON, ANTHONY WROTEN, ANTHONY ALLEN, DARIUS MILES, SEBASTIAN TELFAIR, RONALD GLEN DAVIS, and CHARLES WATSON JR., the defendants, as well as relatives of PATTERSON, MILES, and TELFAIR, each received endodontic therapy on multiple teeth on a single date. For example:

a.   MOON received endodontic therapy on five teeth on March 23, 2018, three teeth on March 7, 2019, and two teeth on March 15, 2019.

b.   TELFAIR received endodontic therapy on five teeth on March 6, 2018, eight teeth on March 1, 2019, and four teeth on March 5, 2019.

c.   WATSON JR. received endodontic therapy on twelve teeth on February 10, 2019.

42.   The DENTAL OFFICE-1 invoices for RONALD GLEN DAVIS and ANTHONY WROTEN, the defendants, and the DENTAL OFFICE-2 invoice for ANTHONY ALLEN, the defendant, reflect many of the same purported procedures on the same teeth on the same dates. For example, DAVIS, WROTEN and ANTHONY ALLEN each purportedly had: (a) endodontic therapy on the same six teeth on April 30, 2016; and (b) crowns on the same six teeth on May 11, 2016. Also, WROTEN

and ALLEN each purportedly had endodontic therapy on the same thirteen teeth on September 6, 2018; DAVIS also purportedly had endodontic therapy on nine of the same teeth on the same day. WROTEN and ALLEN also each purportedly had crowns on the same twelve teeth on October 2, 2018; DAVIS also had crowns on eight of the same teeth on the same day.

43. The DENTAL OFFICE-1 invoices for a relative of RUBEN PATTERSON, the defendant, and SEBASTIAN TELFAIR, the defendant, reflect many of the same purported procedures on the same teeth on the same dates. For example, a relative of PATTERSON and TELFAIR each purportedly had: (a) endodontic therapy on the same five teeth on March 6, 2018; and (b) crowns on the same three teeth on April 12, 2018.

44. TERRENCE WILLIAMS and AAMIR WAHAB, the defendants, had extensive discussions via text messages about the scheme to defraud the Plan.

   a. For example, in or about March 2019, WILLIAMS requested that WAHAB produce additional invoices, but WAHAB was hesitant to do so because they were having trouble collecting kickbacks from co-conspirators. WILLIAMS appeared to be upset and messaged WAHAB, in substance and in part, "It's all good, From the jump it's clearly been about making you money . . . and getting bread and you mad about getting money for printing a paper lying to the bitch at the front desk about shit And not having to work

on a . . . mouth but make money you really got an issue with me making money doing all the work[?]" WAHAB responded in, substance and in part, "Fine you can have the invoice but you gotta deal with the dudes direct to get the money." WILLIAMS later responded to WAHAB, in substance and in part, "YOUVE MADE THOUSANDS OF FUCKING DOLLARS TO PRINT A INVOICE WITH A NAME AT THE TOP like you fucking kidding me[?]   We not gonna act like you doing dental work."

    b.    Also in or about March 2019, WILLIAMS provided WAHAB with the names, dates and amounts to be listed on the fraudulent invoices. WILLIAMS messaged WAHAB, in substance and in part, "Anthony Allen," "Desire Allen," "[Darius Miles's wife]," "Darius Miles." WAHAB responded, in substance and part, "How much are these invoices for[?] . . . What dates can I put on these invoices[?] . . . Send me the totals for each. . . . How you getting the bread from them[?]" WILLIAMS responded, in substance an in part, "On these 3 i can get you close to 30 [thousand] Monday if we get it in tomorrow we will be paid Monday."

    c.    On or about July 10, 2019, and July 11, 2019, WAHAB and WILLIAMS exchanged text messages concerning difficulties collecting scheme proceeds from SEBASTIAN TELFAIR, DARIUS MILES, and MILTON PALACIO, the defendants. On or about July 11, 2019, WILLIAMS indicated to WAHAB that he had spoken with KEYON DOOLING, the defendant, about the issue. Specifically, WILLIAMS stated to

WAHAB, in substance and in part, "Just got off the phone with Keyon about the shit[.]"

### AAMIR WAHAB Provided KEYON DOOLING Fraudulent Dental Office-1 Invoices in Furtherance of The Scheme to Defraud the Plan

45. Beginning at least in or about April 2018, KEYON DOOLING and AAMIR WAHAB, the defendants, discussed WAHAB's creation of fraudulent dental invoices for DOOLING and others to submit to the Plan. Specifically, on or about April 23, 2018, DOOLING messaged WAHAB the following, in substance and in part, "Good day sir! When is a good time connect? I have some guys ready to start the process. Thanks Keyon."

a. The next day, DOOLING and WAHAB had the following text conversation:

DOOLING: Good day sir! Let's start the process with [CC-3], what's the 1st step?

WAHAB: Do you need a receipt for him so he can be reimbursed?

DOOLING: Yes sir! But I won't it set up as a prepay so [i]T goes direct to us and take it from there[.]

WAHAB: Ok so I can just make a receipt for what you guys need so he can get reimbursed[.]

b.   On or about April 30, 2018, WAHAB and DOOLING continued their discussion:

DOOLING:   Let's make this thing grow sir.

WAHAB:   Lol I'm down bro[.]   Get me the whole NBA 😂

DOOLING:   Yes we will[.]

46.   On or about March 16, 2019, KEYON DOOLING, the defendant, requested, in substance and in part, that AAMIR WAHAB, the defendant, create an invoice that DOOLING could submit for himself. WAHAB responded "Ok I'll work on it tomorrow.  How much you need it for?"  DOOLING stated "20ish."  On or about March 18, 2019, DOOLING provided his email address to WAHAB and WAHAB responded "Sent."  On or about the same day, March 18, 2019, DOOLING signed and dated a claim form, which sought a $22,600 reimbursement for dental services purportedly performed by WAHAB for DOOLING from March 1, 2019 through March 14, 2019.  The claim form was supported by a DENTAL OFFICE-1 invoice sent by WAHAB to DOOLING.  DOOLING's signature on the claim form certified that the information provided on the form was accurate when, in fact, it was not.  DOOLING submitted, or caused to be submitted, this claim to the Administrative Manager.  The funds DOOLING requested from this claim, were paid by the Administrative Manager to DOOLING.

47.   KEYON DOOLING, the defendant, also referred other former NBA players to AAMIR WAHAB, the defendant, so that those former

NBA players could participate in the fraudulent scheme, and, in return, DOOLING received a portion of their fraudulent proceeds.

      a.    On or about April 23, 2018, DOOLING sent a text message to another particular individual ("CC-5") that stated, in substance in part, "we gotta lock down [t]he dentist bro. I have 3 guys ready to roll."

      b.    On or about May 1, 2018, DOOLING messaged CC-5 "9800$ a month for me you and [another individual]. . . . A piece."

      c.    On or about June 28, 2019, DOOLING messaged CC-5 to discuss how to split, and send, proceeds from the fraudulent scheme. DOOLING stated, in substance and in part, "Hey bro, here's the breakdown: 5600 for you and me. Then 10800 for the guy. I fronted him 4200$ so you can put it with my 5600= 9800 to My [bank account information]. . . . That way everything is under 10k."

<u>Terrence Williams Facilitated His Co-Conspirators' Submission of Fraudulent Letters of Medical Necessity in Furtherance of the Fraudulent Scheme</u>

    48.  With respect to the DENTAL OFFICE-1 claims of RONALD GLEN DAVIS and CHARLES WATSON JR., the defendants, the Administrative Manager requested that letters of medical necessity be provided to justify the May 8, 2019 Claims for DENTAL OFFICE-1 services. On May 31, 2019, TERRENCE WILLIAMS, the defendant, received an email entitled "Scanned Copies" from a UPS store in Tukwila, Washington -- near where WILLIAMS resides -- which attached responsive letters of medical necessity for DAVIS and

WATSON JR., dated May 31, 2019, purporting to be from AAMIR WAHAB.
(the "May 31, 2019 Wahab Letters"). The May 31, 2019 Wahab Letters
were submitted to the Administrative Manager to obtain
reimbursement for the May 8, 2019 Claims. The May 31, 2019 Wahab
Letters are unusual in several respects: they are not on
letterhead, they contain unusual formatting, they have grammatical
errors, and they have the same font and font size as the May 31,
2019 CHIROPRACTOR-1 Letters referenced above.

### False and Fraudulent Dental Office-1 and Dental Office-2 Claims Were Submitted in Furtherance of the Fraudulent Scheme

49.   Between on or about April 17, 2018 and May 8, 2019, RUBEN
PATTERSON, JAMARIO MOON, ANTHONY WROTEN, RONALD GLEN DAVIS, and
CHARLES WATSON JR., the defendants, and others known and unknown,
submitted and caused to be submitted false and fraudulent claims
to the Plan seeking reimbursement for services that PATTERSON,
MOON, WROTEN, DAVIS, WATSON JR., and relatives of PATTERSON
purportedly received from DENTAL OFFICE-1 on particular dates. The
claims consisted of: (a) false and fraudulent reimbursement claim
forms in which PATTERSON, MOON, DAVIS, and WATSON JR. each falsely
certified that he and/or his family members had received dental
services on specific service dates; and (b) false and fraudulent
DENTAL OFFICE-1 invoices for PATTERSON, MOON, WROTEN, DAVIS,
WATSON JR., and relatives of PATTERSON.

50.   Between on or about March 20, 2019 and March 21, 2019, ANTHONY ALLEN, DESIREE ALLEN, DARIUS MILES, and SEBASTIAN TELFAIR, the defendants, submitted and caused to be submitted false and fraudulent claims to the Plan seeking reimbursement for services that ANTHONY ALLEN, MILES, TELFAIR, and relatives of MILES and TELFAIR purportedly received from DENTAL OFFICE-2 on particular dates.   The claims consisted of:   (a)   false and fraudulent reimbursement claim forms in which ANTHONY ALLEN, MILES, and TELFAIR each falsely certified that he and/or his family members had received dental services on specific service dates; and (b) false and fraudulent DENTAL OFFICE-2 invoices for ANTHONY ALLEN, MILES, TELFAIR, and relatives of MILES and TELFAIR.

51.   The Administrative Manager approved the DENTAL OFFICE-1 claims of RUBEN PATTERSON, JAMARIO MOON, and ANTHONY WROTEN, the defendants. The Plan paid: at least $172,830 to PATTERSON; $50,475 to MOON; and $94,981.64 to WROTEN.

52.   The Administrative Manager denied the DENTAL OFFICE-1 claims of RONALD GLEN DAVIS, the defendant, for $132,000, and CHARLES WATSON JR., the defendant, for $121,800. Upon review and investigation of these claims, the Board concluded that DAVIS and WATSON JR. did not receive the DENTAL OFFICE-1 services set forth in their claims.

53.   The Administrative Manager approved the DENTAL OFFICE-2 claims of ANTHONY ALLEN, DARIUS MILES, and SEBASTIAN TELFAIR, the

defendants. The Plan paid $155,075 to ANTHONY ALLEN; $84,140 to MILES; and $151,356 to TELFAIR. The Board later independently reviewed the DENTAL OFFICE-2 claims of ANTHONY ALLEN and TELFAIR. As part of this review, the Board tried to substantiate that ANTHONY ALLEN and TELFAIR had received the dental services from DENTAL OFFICE-2 that formed the basis of their claims and concluded that ANTHONY ALLEN and TELFAIR had not received such services. The Board concluded that the DENTAL OFFICE-2 claims of ANTHONY ALLEN and TELFAIR should not have been approved and retroactively denied their claims. The Board also advised that ANTHONY ALLEN and TELFAIR should repay the money that they received in connection with these claims. As noted above, ANTHONY ALLEN repaid $350,075 of the $420,075 he owed the Plan for his CHIROPRACTIC OFFICE-1 and DENTAL OFFICE-2 claims. TELFAIR did not make any repayments to the Plan.

54.   In total, AAMIR WAHAB, the defendant, and members of his staff, provided at least approximately $1.1 million in fraudulent invoices for RUBEN PATTERSON, JAMARIO MOON, ANTHONY WROTEN, ANTHONY ALLEN, DARIUS MILES, SEBASTIAN TELFAIR, CHARLES WATSON JR., and MILTON PALACIO, the defendants, and Gregory Smith.

## THE FALSE AND FRAUDULENT WELLNESS OFFICE-1 CLAIMS

**TERRENCE WILLIAMS Obtained Fraudulent Wellness Office-1 Invoices from WILLIAM WASHINGTON, and Sent Those Invoices to Co-Conspirators in Furtherance of Their Scheme to Defraud the Plan**

55.   Between on or about March 16, 2019 and January 30, 2020, TERRENCE WILLIAMS, the defendant, emailed false and fraudulent WELLNESS OFFICE-1 invoices and related receipts to MILTON PALACIO, the defendant, and Melvin Ely.   WILLIAMS obtained those invoices from WILLIAM WASHINGTON, the defendant.

56.   The WELLNESS OFFICE-1 invoices for MILTON PALACIO, the defendant and Melvin Ely purported to show that they each received wellness services at WELLNESS OFFICE-1 and affiliated clinics in Washington State on particular dates when, in fact, they did not, as neither PALACIO nor Ely were in Washington State on those dates.

57.   On or about September 3, 2019, TERRENCE WILLIAMS, the defendant, sent Melvin Ely, an email with a WELLNESS OFFICE-1 invoice for MILTON PALACIO, the defendant, dated July 11, 2017, and stated "Example, but clearly your name on it."

58.   On or about October 9, 2019, after TERRENCE WILLIAMS, the defendant, emailed certain WELLNESS OFFICE-1 invoices to Melvin Ely, Ely replied that "it didn't come out right."

59.   On or about November 20, 2019, MILTON PALACIO, the defendant, was advised by the Administrative Manager to submit an itemized statement and an NBA substantiation authorization form. On or about November 20, 2019, PALACIO uploaded WELLNESS OFFICE-1

invoices to the Administrative Manager's consumer portal for MELVIN ELY, the defendant, that were identical to PALACIO's WELLNESS OFFICE-1 invoices, except that the name "Melvin Ely" replaced "Milt Palacio." The WELLNESS OFFICE-1 invoices for PALACIO and Ely contained the same invoice numbers, same service dates, same treatments, and the same dollar amounts.

60. TERRENCE WILLIAMS and WILLIAM WASHINGTON, the defendants, engaged in extended communications about the scheme. WILLIAMS discussed with WASHINGTON, in substance and in part, "loaning" former NBA players money, after which WASHINGTON would use the former players' Plan Debit Cards to be paid back. For example, on or about April 12 and April 13, 2020, WASHINGTON and WILLIAMS engaged in the following text message conversation, in substance and in part:

> WASHINGTON: We gotta likely submit invoice for services or least have them available.
>
> WILLIAMS: For 20?
>
> WASHINGTON: Assuming everything is good tomorrow with them and the moneys there then 50. . . . For the 20 in this situation, i gotta do the 50. There's a bunch of work it's going to require to. For the 20 up front I'd have to get the 50. How was you looking to make money in this situation?

WILLIAMS:       Because i can flip the money then Loan them money or give it to them.  You have the capital i have the connects.  You have the card reader I have the [Plan Debit C]ards. Let's work together . . . .  Give me the bread I'll get it to them.  You still swiping.  You getting your money back.  And making money but you can't make 30k bro.  Let me make something i been letting you get double for 8 months. . . .

WILLIAMS:       Just got Darius miles And get got [CC-4] rich He got 420 on his . . . you gonna owe me.  Ok.

WASHIGNTON:  We owe each other lol. . . .  First thing is trying to get a plan for these NBA these nba players.  Btw Milt only has like 37k left on his [Plan Debit] [C]ard. We need to stop pretty soon.  What does he want us to stop it at?  Let me know ASAP because that will decide what amount Inout this next invoice in for. I have to have it ready by tomorrow.

WILLIAMS:       Stop why[?]

61. To effectuate the scheme, WILLIAM WASHINGTON, the defendant, charged, and caused others to charge, the Plan Debit Cards of MILTON PALACIO, the defendant, and Melvin Ely, for a total of at least approximately $436,126.

<u>False and Fraudulent Wellness Office-1 Claims Were Submitted in
Furtherance of the Fraudulent Scheme</u>

62.   From on or about September 11, 2019, through January 21, 2020, MILTON PALACIO, the defendant, and Melvin Ely submitted and caused to be submitted false and fraudulent claims to the Plan seeking reimbursement for services that PALACIO and Ely purportedly received from WELLNESS OFFICE-1 on particular dates. The claims were submitted via the Administrative Manager's consumer portal and were supported by the fraudulent WELLNESS OFFICE-1 invoices provided by WILLIAMS to PALACIO and Ely. WILLIAMS received these WELLNESS OFFICE-1 invoices from WILLIAM WASHINGTON, the defendant.

63.   On or about September 16, 2019, an email from Melvin Ely's spouse's email account was sent to Administrative Manager regarding the subject "Denied Claim (Attn: []": "Good afternoon, my name is Melvin Ely this is my written notification referencing the denied claims listed below, these claims in addition to any and all claims moving forward have not been, and will not be processed through insurance unless indicated as such…."

64.   Melvin Ely signed a letter submitted to the Administrative Manager stating that certain denied claims will not be processed through insurance. The purpose of this letter was for the Plan to then pay the claims.

65.   MILTON PALACIO, the defendant, signed a letter dated October 24, 2019, stating that he paid out of pocket for various services associated with the fraudulent WELLNESS OFFICE-1 invoices.

66.   On May 27, 2020, MILTON PALACIO, the defendant, emailed an Administrative Manager employee regarding his lack of reimbursement for the $74,998 claim: "Due to my insurance not being accepted at this office I requested reimbursement for these procedures through [Administrative Manager]. Also it is not showing in my account, so I was just wondering is it on hold or will it be credited back to my account if not reimbursed."

67.   In total, WILLIAM WASHINGTON, the defendant, provided to TERRENCE WILLIAMS, the defendant, at least approximately $365,078 in fraudulent invoices and Plan Debit Card charges for MILTON PALACIO, the defendant, and Melvin Ely, which were submitted to the Administrative Manager. The Administrative Manager, however, denied PALACIO and Ely's related claims.

**TERRENCE WILLIAMS RECEIVED AT LEAST APPROXIMATELY $300,000 IN KICKBACKS IN CONNECTION WITH THE FRAUDULENT SCHEME**

68.   WILLIAM WASHINGTON, AAMIR WAHAB, RUBEN PATTERSON, JAMARIO MOON, ANTHONY WROTEN, WILLIAM BYNUM, DARIUS MILES, ALAN ANDERSON, SHANNON BROWN, CHARLES WATSON JR., RONALD GLEN DAVIS, and MILTON PALACIO, the defendants, and others known and unknown, paid kickbacks to TERRENCE WILLIAMS, the defendant, in connection

with their fraudulent CHIROPRACTIC-1 OFFICE, DENTAL OFFICE-1, DENTAL OFFICE-2, and WELLNESS OFFICE-1 claims. For example:

a.   On May 2, 2018 and May 3, 2018 - a few days after the Plan paid PATTERSON for one of his DENTAL OFFICE-1 claims - PATTERSON made $5,000 and $1,000 payments to WILLIAMS.

b.   On May 31, 2018 - the day after PATTERSON signed a DENTAL OFFICE-1 claim form for one of his relatives - PATTERSON paid $5,000 to WILLIAMS.

c.   On or about May 25, 2018 - one day after the Plan paid MOON for one of his reimbursement claims for DENTAL OFFICE-1 services - MOON paid $15,500 to WILLIAMS.

d.   On or about April 4, 2019 - several days before MOON submitted one of his reimbursement claims for DENTAL OFFICE-1 services - MOON paid $200 to WILLIAMS.

e.   On or about October 20, 2018 - a day after the Plan made a payment to WROTEN, WROTEN paid $20,000 to WILLIAMS.  On or about November 2, 2018, the Plan made a second payment to WROTEN. Roughly three weeks later, Wroten made two payments totaling $1800 to WILLIAMS.

f.   On or about December 12, 2018 - six days after the Plan paid BYNUM for his CHIROPRACTIC OFFICE-1 claim - BYNUM paid $30,000 to WILLIAMS.

g.   On or about March 27, 2019 - roughly five days after MILES submitted the claim for CHIROPRACTIC OFFICE-1 and two days

before MILES submitted the claim for DENTAL OFFICE-2 services –
MILES paid $33,000 to WILLIAMS.

h.    On or about April 5, 2019 – roughly one week before
MILES submitted a claim for CHIROPRACTIC OFFICE-1 services – MILES
paid $28,000 to WILLIAMS.

i.    On or about April 22, 2019, the Plan paid $121,000
to ANDERSON for CHIROPRACTIC OFFICE-1 services. Roughly a week
later, on April 29, 2019, ANDERSON paid $2,000 to WILLIAMS. On or
about May 1, 2019, ANDERSON paid $3,000 to WILLIAMS.

j.    On or about April 26, 2019 – just a few days after
the Plan paid $273,819.82 to BROWN for CHIROPRACTIC OFFICE-1
services – BROWN paid $20,000 to WILLIAMS.

k.    On May 1, 2019 – roughly a week before WATSON JR.
submitted a claim for CHIROPRACTIC OFFICE-1 and DENTAL OFFICE-1
services – WATSON JR. paid $7,500 to WILLIAMS.

l.    On or about May 8, 2019 – the day that WATSON JR.
signed the claim form for CHIROPRACTIC OFFICE-1 and DENTAL OFFICE-
1 services – WATSON JR. paid $500 to WILLIAMS.

m.    On or about May 10, 2019 – two days after WATSON
JR. signed the claim form for CHIROPRACTIC OFFICE-1 and DENTAL
OFFICE-1 services – WATSON JR. paid $49,500 to WILLIAMS.

n.    On or about June 25, 2019 – the date that DAVIS
emailed to the Administrative Manager DAVIS's June 25, 2019 Letter
from DOCTOR-2 – DAVIS paid $1,000 to WILLIAMS.

o.   On or about May 29, 2019 – over two weeks before PALACIO received fraudulent CHIROPRACTIC OFFICE-1 invoices from WILLIAMS – PALACIO's parents paid $7,500 to WILLIAMS.   PALACIO does not appear to have summitted these particular fraudulent invoices to the Plan.

p.   On or about April 20, 2018, AAMIR WAHAB, the defendant, paid WILLIAMS $4,000.

## WILLIAMS USED THREATS AND DECEPTIVE TACTICS TO COLLECT MONEY FROM HIS CO-CONSPIRATORS

69.   TERRENCE WILLIAMS, the defendant, at times used threats and at other times impersonated individuals in an attempt to extract additional money from his co-conspirators, including money that co-conspirators obtained from the Plan. WILLIAMS impersonated actual persons by using their personal identifying information.

70.   TERRENCE WILLIAMS, the defendant, agreed with his co-conspirators that they would pay kickbacks to WILLIAMS in exchange for WILLIAMS providing them with false and fraudulent invoices in connection with the scheme to defraud the Plan. As described above, at least ten co-conspirators paid kickbacks to WILLIAMS totaling at least approximately $300,000. However, others did not.

71.   CHRISTOPHER DOUGLAS-ROBERTS, a/k/a "Supreme Bey," the defendant, did not pay a kickback to TERRENCE WILLIAMS, the defendant, despite having been paid by the Plan in connection with

his fraudulent and false claim. On or about February 27, 2019, WILLIAMS used a personal email account - which WILLIAMS created and controlled - that contained the first name of ADMINISTRATIVE MANAGER EMPLOYEE-1, followed by the name of one of the Plan's Administrative Managers and then the word "benefits" to email DOUGLAS-ROBERTS regarding his claim. In that email, WILLIAMS falsely claimed to be ADMINISTRATIVE MANAGER EMPLOYEE-1 and falsely raised a potential issue with DOUGLAS-ROBERTS's reimbursement in an effort to frighten DOUGLAS-ROBERTS into re-engaging with WILLIAMS. WILLIAMS - posing as ADMINISTRATIVE MANAGER EMPLOYEE-1 - stated that DOUGLAS-ROBERTS's claim "has the same processed invoice numbers as another claim for a different player," which would result in voiding the claim and DOUGLAS-ROBERTS needing to pay back the Plan. WILLIAMS signed the email using ADMINISTRATIVE MANAGER EMPLOYEE-1's name, employer, business address, main business phone number, and business fax number, but changed ADMINISTRATIVE MANAGER EMPLOYEE-1's direct business phone number to a phone number with an area code for New York City.

72.    TERRENCE WILLIAMS, the defendant, also pretended to be ADMINISTRATIVE MANAGER EMPLOYEE-2 and ADMINISTRATIVE MANAGER EMPLOYEE-3, who have the same first name, specifically Name-1, to defraud WILLIAM WASHINGTON, the defendant, into paying WILLIAMS approximately $274,000 -- the approximate amount that WASHINGTON

was able to charge using the Plan Debit Cards of MILTON PALACIO, the defendant, and Melvin Ely.

     a. On or about October 16, 2020, WILLIAMS created another email account that contained the first name of both ADMINISTRATIVE MANAGER EMPLOYEE-2 and ADMINISTRATIVE MANAGER EMPLOYEE-2, *i.e.*, Name-1, followed by the name of the Administrative Manager.  That same day WILLIAMS caused the account to email WILLIAM WASHINGTON, the defendant, and warn him that the Plan accounts of MILTON PALACIO, the defendant, and Melvin Ely would be frozen until WASHINGTON paid the "Administrative Manager" a sum of money.

     b. Over the next several months and through at least in or about March 2021, WILLIAMS used the email account appearing to belong to either ADMINISTRATIVE MANAGER EMPLOYEE-2 and ADMINISTRATIVE MANAGER EMPLOYEE-3 to threaten WASHINGTON, including demands that WASHINGTON pay a "fine," or the "Administrative Manager" would tell the authorities about WASHINGTON's submission of fraudulent invoices.  Specifically, on or about February 9, 2021, WILLIAMS sent the following message, in substance and in part, purporting to be from either ADMINISTRATIVE MANAGER EMPLOYEE-2 or ADMINISTRATIVE MANAGER EMPLOYEE-3: "I will be frank with you, there's a big hammer that's coming down soon, on 13 people your 'boys' included this is more than a Doctor's license being suspended Or losing health benefits. Most honest I can be."

c. To convince WASHINGTON that the email account belonged to the Administrative Manager, WILLIAMS created fraudulent letters bearing the logo of the Administrative Manager, which were signed by Name-1.

73. TERRENCE WILLIAMS, the defendant, created identities of other individuals to convince WILLIAM WASHINGTON, the defendant, to pay additional funds to avoid facing consequences for defrauding the Plan. As a result of this conduct by WILLIAMS, WASHINGTON paid WILLIAMS approximately $346,000.

## STATUTORY ALLEGATIONS

74. From at least in or about 2017, up to and including at least in or about October 2021, in the Southern District of New York and elsewhere, TERRENCE WILLIAMS, ALAN ANDERSON, AAMIR WAHAB, WILLIAM WASHINGTON, KEYON DOOLING, ANTHONY ALLEN, DESIREE ALLEN, SHANNON BROWN, WILLIAM BYNUM, RONALD GLEN DAVIS, CHRISTOPHER DOUGLAS-ROBERTS, a/k/a "Supreme Bey," JAMARIO MOON, DARIUS MILES, MILTON PALACIO, RUBEN PATTERSON, EDDIE ROBINSON, SEBASTIAN TELFAIR, CHARLES WATSON JR., and ANTHONY WROTEN, the defendants, and others known and unknown, willfully and knowingly, did combine, conspire, confederate, and agree together and with each other to commit: (a) health care fraud, in violation of Title 18, United States Code, Section 1347; and (b) wire fraud, in violation of Title 18, United States Code, Section 1343.

75.   It was a part and object of the conspiracy that TERRENCE WILLIAMS, AAMIR WAHAB, WILLIAM WASHINGTON, ALAN ANDERSON, KEYON DOOLING, ANTHONY ALLEN, DESIREE ALLEN, SHANNON BROWN, WILLIAM BYNUM, RONALD GLEN DAVIS, CHRISTOPHER DOUGLAS-ROBERTS, a/k/a "Supreme Bey," JAMARIO MOON, DARIUS MILES, MILTON PALACIO, RUBEN PATTERSON, EDDIE ROBINSON, SEBASTIAN TELFAIR, CHARLES WATSON JR., and ANTHONY WROTEN, the defendants, and others known and unknown, willfully and knowingly, would and did execute and attempt to execute, a scheme or artifice to defraud a health care benefit program and to obtain by means of false or fraudulent pretenses, representations, and promises, money or property under the custody or control of a health care benefit program in connection with the delivery of and payment for health care benefits, items and services, in violation of Title 18, United States Code, Section 1347.

76.   It was further a part and object of the conspiracy that TERRENCE WILLIAMS, ALAN ANDERSON, AAMIR WAHAB, WILLIAM WASHINGTON, KEYON DOOLING, ANTHONY ALLEN, DESIREE ALLEN, SHANNON BROWN, WILLIAM BYNUM, RONALD GLEN DAVIS, CHRISTOPHER DOUGLAS-ROBERTS, a/k/a "Supreme Bey," JAMARIO MOON, DARIUS MILES, MILTON PALACIO, RUBEN PATTERSON, EDDIE ROBINSON, SEBASTIAN TELFAIR, CHARLES WATSON JR., and ANTHONY WROTEN, the defendants, and others known and unknown, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money

and property by means of false and fraudulent pretenses, representations, and promises, would and did transmit and cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, in violation of Title 18, United States Code, Section 1343.

(Title 18, United States Code, Section 1349.)

## COUNT TWO
### (Aggravated Identity Theft)

The Grand Jury further charges:

77.   The allegations contained in paragraphs 1 through 73 of this Indictment are repeated and realleged as if fully set forth herein.

78.   From at least in or about June 2018, through at least in or about May 2019, in the Southern District of New York and elsewhere, TERRENCE WILLIAMS, the defendant, knowingly transferred, possessed, and used, without lawful authority, a means of identification of another person, during and in relation to a felony violation enumerated in Title 18, United States Code, Section 1028A(c), to wit, WILLIAMS used the name, employer, business address, main business phone number, and business fax number of another person, namely, Administrative Manager

Employee-1, during and in relation to the offense charged in Count One of this Indictment.

(Title 18, United States Code, Sections 1028A(a)(1),
1028A(b), and 2.)

### COUNT THREE
### (Aggravated Identity Theft)

79.   The allegations contained in paragraphs 1 through 73 of this Indictment are repeated and realleged as if fully set forth herein

80.   From at least in or about May 2019 through at least, in or about June 2019, in the Southern District of New York and elsewhere, TERRENCE WILLIAMS and ALAN ANDERSON, the defendants, knowingly transferred, possessed, and used, without lawful authority, a means of identification of another person, during and in relation to a felony violation enumerated in Title 18, United States Code, Section 1028A(c), to wit, WILLIAMS and ANDERSON used, possessed, transferred, and aided and abetted the use, possession, and transfer, of the name, signature, and business name of another person, namely, CHIROPRACTOR-1, during and in relation to the offense charged in Count One of this Indictment.

(Title 18, United States Code, Sections 1028A(a)(1),
1028A(b), and 2.

### FORFEITURE ALLEGATION

81.   As a result of committing the offense alleged in Count One of this Indictment, TERRENCE WILLIAMS, ALAN ANDERSON, AAMIR

WAHAB, WILLIAM WASHINGTON, KEYON DOOLING, ANTHONY ALLEN, DESIREE ALLEN, SHANNON BROWN, WILLIAM BYNUM, RONALD GLEN DAVIS, CHRISTOPHER DOUGLAS-ROBERTS, a/k/a "Supreme Bey," JAMARIO MOON, DARIUS MILES, MILTON PALACIO, RUBEN PATTERSON, EDDIE ROBINSON, SEBASTIAN TELFAIR, CHARLES WATSON JR., and ANTHONY WROTEN, the defendants, shall forfeit to the United States, pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and 982(a)(7), and Title 28, United States Code, Section 2461(c), any and all property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of said offense, including but not limited to a sum of money in United States currency representing the amount of proceeds traceable to the commission of said offense.

## Substitute Assets Provision

82.     If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

a.  cannot be located upon the exercise of due diligence;

b.  has been transferred or sold to, or deposited with, a third person;

c.  has been placed beyond the jurisdiction of the Court;

d.  has been substantially diminished in value; or

e.  has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), and Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of the defendants up to the value of the above forfeitable property.

> (Title 18, United States Code, Sections 981 and 982;
> Title 21, United States Code, Section 853; and
> Title 28, United States Code, Section 2461.)

_____
FOREPERSON

_____
DAMIAN WILLIAMS
United States Attorney

Form No. USA-33s-274 (Ed. 9-25-58)

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

v.

TERRENCE WILLIAMS,
AAMIR WAHAB,
WILLIAM WASHINGTON,
ALAN ANDERSON,
KEYON DOOLING,
ANTHONY ALLEN,
DESIREE ALLEN,
SHANNON BROWN,
WILLIAM BYNUM,
RONALD GLEN DAVIS,
CHRISTOPHER DOUGLAS-ROBERTS,
a/k/a "Supreme Bey,"
JAMARIO MOON,
DARIUS MILES,
MILTON PALACIO,
RUBEN PATTERSON,
EDDIE ROBINSON,
SEBASTIAN TELFAIR,
CHARLES WATSON JR.,
and
ANTHONY WROTEN,

Defendants.

### SEALED SUPERSEDING INDICTMENT

S3 21 Cr. 603 (VEC)
(18 U.S.C. §§ 1349, 1028A, and 2.)

DAMIAN WILLIAMS
United States Attorney

Foreperson

4/25/22   FILED INDICTMT   WARRANT ISSUED
Generation USMJ